Nathan M. Smith, (023471)
Nathan@Ariano.legal
ARIANO & ASSOCIATES
2375 E. Camelback Rd.
Suite 600
Phoenix, Arizona, 85016
Tel. 602.666.0050
Fax 602.660.0277
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Shane Moore, an unmarried individual, <br><br> Plaintiff, <br><br> vs. <br><br> Kulwinder Kaur, an individual doing business as 7-ELEVEN #16082F, Raj Hundal, an individual, Defendants. | No. <br><br> **COMPLAINT** <br> (Jury Trial Demanded) |

Plaintiff Shane Moore, through his attorney, alleges as follows:

**SUMMARY OF THE COMPLAINT**

1. Shane Moore, age 28, worked seven days a week, 8 hours a day at the 7-ELEVEN store located at 4840 N. 67th Avenue, Phoenix, from August 17, 2015 through February 14, 2016. Kulwinder Kaur, the owner of the 7-ELEVEN franchise at 4840 N. 67th Avenue, and her son and store manager Raj Hundal, paid Mr. Moore approximately

$3,368 for approximately 1500 hours of work, of which at least 440 hours were overtime. Mr. Moore, who suffers from disabilities that impact cognition and reasoning, was never taught to clock in and out or otherwise record his time. He was never provided or shown how to access paystubs or payroll records that showed hours worked and wages paid. He was paid on a debit card without any explanation or notice of fees.

2.   When Mr. Moore complained about his wages he was mocked and insulted. Ms. Kaur and Mr. Hundal both harassed and insulted Mr. Moore repeatedly, calling him "retarded."  Finally, Ms. Kaur and Mr. Hundal fired him for complaining about his pay and threatened a groundless restraining order.

3.   Mr. Moore brings this action under the Fair Labor Standards Act, the Arizona Wage Act, the Arizona Minimum Wage Act, the Americans with Disabilities Act, as amended, and the Arizona Employment Protection Act to recover lost wages, damages, penalties and fees from Defendants.

## JURISDICTION AND VENUE

4.   Jurisdiction in this Court is authorized by 28 U.S.C. § 1331. The Court has jurisdiction because two of the claims arise out of federal statutes: the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.

5.   Jurisdiction is authorized by 42 U.S.C. 12-1117 and 42 U.S.C. § 2000e-5 because Plaintiff presented his charge to the EEOC or State agency within the statute of limitations and received his right to sue letter after its date of September 2, 2016. This Complaint is filed within 90 days of receipt of the right to sue letter.

Complaint and Demand for Jury Trial - 2

6. This Court is an authorized venue for this action because the alleged conduct at issue that gives rise to the Complaint occurred in the State of Arizona, Maricopa County. 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

7. Plaintiff is informed and believes and therefore alleges that Defendant Kulwinder Kaur.owns and operates at least four 7-ELEVEN franchises as a single enterprise. The franchises are located at 4840 N. 67th Avenue, Phoenix, 4831 North 75th Avenue, Phoenix, 4302 W. McDowell Rd. and 4101 North 27th Avenue, Phoenix.

8. Plaintiff is informed and believes and therefore alleges that Defendant Hundal acts as a store manager and exercises control over hiring, firing and the terms of employment for employees at the 4840 North 67th Avenue location.

9. Plaintiff is informed and believes and therefore alleges that Defendant Kaur operates these stores as a part of the same enterprise. The stores are not registered under trade names or separate L.L.C.'s but are instead owned by Kaur as an individual. Additionally, employees work at different stores without regard to the store where they were hired. Mr. Moore, for example, worked at three of the stores owned by Defendant Kaur during his employment, but was only paid from one store. Mr. Moore's w-2 for 2015 lists his employer as Kulwinder Kaur 16082, 4831 North 75th Ave, Phoenix, although he worked most of his hours at the 4840 N. 67th Avenue store.

10. Plaintiff is informed and believes and therefore alleges that Defendant Kaur employs 15 or more full-time equivalent employees at the four locations.

Complaint and Demand for Jury Trial - 3

11. Plaintiff is informed and believes and therefore alleges that Kaur is engaged in interstate commerce and has gross sales of over $500,000 per year at the four stores collectively, and at the 4840 North 67th Avenue location alone.

12. In August of 2015, Shane Moore asked Kulwinder Kaur, and her son Raj Hundal, if he could help out at the 7-ELEVEN store at 4840 North 67th Avenue, Phoenix. Mr. Moore lived nearby and often frequented the store.

13. Mr. Moore and Mr. Hundal discussed the possibility of him joining 7-ELEVEN as a regular employee. In particular, Mr. Hundal told Mr. Moore that the store would soon receive a pizza oven and begin serving pizza to customers. Mr. Hundal told Mr. Moore there might be a position for him when the pizza oven was installed. Mr. Moore took the initiative to obtain a food handler's safety certification in order to legally prepare and serve the pizza.

14. Mr. Moore began working at the 4840 North 67th Avenue on August 17, 2015, performing tasks such as stocking, cleaning the parking lot, cleaning roof vents and washing windows.

15. From the beginning, Mr. Moore told Ms. Kaur and her son and agent, Raj Hundal, that he had multiple cognitive disabilities, including telling them that he was "slow" but that he did eventually catch-on.

16. One day, Mr. Moore was stocking the freezer and Mr. Hundal was present managing the store. Mr. Hundal kept asking Mr. Moore questions, including asking for his social security number and home address. Mr. Moore deduced that Mr. Hundal was

filling out a job application for Mr. Moore.  Mr. Hundal admitted he had completed a job application for Mr. Moore

17. A handful of days later, Mr. Hundal called Mr. Moore and asked him to come down to the store.  When Mr. Moore arrived, Mr. Hundal told him that Mr. Moore's application was approved by 7-ELEVEN. Mr. Hundal gave Mr. Moore a 7-ELEVEN shirt and welcomed him to the 7-ELEVEN team.

18. Mr. Moore was excited to join the team.  While he had held jobs in restaurants and hotels before, the job at 7-ELEVEN was close enough to home to allow him to go home for meals and to visit with his dog on breaks.

19. Mr. Moore was told by Mr. Hundal that he was expected to work 8 hours before midnight every day, but he was allowed to work those hours when they were convenient for him.  Typically, Mr. Moore would work 10:00 a.m. to 3:00 p.m., take time off in the afternoon and return at 7:00 p.m. and work until 3:00 a.m. or later.

20. Mr. Moore regularly worked 7 days a week, at least eight hours a day during the time he worked for Defendants.  He did not take holidays off, including Christmas.

21. Mr. Moore was told he would be paid the minimum wage, $8.05 per hour.

22. Mr. Moore was told he could take 7-ELEVEN products, such as lighters, and food for himself for free.  Mr. Hundal told him Ms. Kaur would just "write it off."  Mr. Moore did take 7-ELEVEN items with Mr. Hundal or Ms. Kaur's approval from time to time. He never received any accounting for the value of these small items.

23. Mr. Moore was never put on the written schedule at work like the other employees.

24. As best he can recall, Mr. Moore never filled out or signed a completed W-4 or equivalent tax form identifying his deductions. Ms. Kaur once asked him about deductions and he requested that she enter the most she could. Mr. Moore recalls entering his social security number and signing blank papers at Ms. Kaur's request.

25. Mr. Moore never received any formal training or onboarding for his new job.

26. Mr. Moore was never told how to clock in and out of work and never did so. He was told that other employees would record his time. When he asked Mr. Hundal how to clock in and out, he was told not to worry about it and to just show up and work.

27. From the outset 7-ELEVEN took advantage of Mr. Moore's trust and hard work. Mr. Moore kept track of the hours he worked in the first two weeks -- 93 hours. He received approximately $210, after deductions.

28. Since his termination, Mr. Moore's attorney discovered a way to access the payroll records from Mr. Moore at paystubportal.com. Those records show he was only credited for work beginning on October 9, 2015, although he began working for Ms. Kaur on August 17, 2015.

29. Mr. Moore worked off the clock with Ms. Kaur and Mr. Hundal's consent. He would volunteer to come in and clean and be permitted to do so but not be paid nor have his time recorded, to his knowledge.

30. Mr. Moore received a W-2 for 2015 from "KULWINDER KAUR 16082F, 4831 NORTH 75TH AVE, PHOENIX, ARIZONA. This was not the location where Mr. Moore worked.

31. Ms. Kaur reported paying only $2,289.51 (before deductions) to Mr. Moore in 2015.

32. Assuming Mr. Moore worked 56 hours per week from August 17 through December 31, 2015 (22 weeks x 56 hours) Mr. Moore worked approximately 1,232 hours for 7-ELEVEN in 2015. His rate of pay was slightly more than $1.85 per hour.

33. Mr. Moore continued to be drastically underpaid for his work for 7-ELEVEN until his termination on or around February 15, 2016. He was paid $8.05 per hour (less deductions) for 134 hours of work from January 1, 2016 through February 18, 2016 and received no further compensation. Mr. Moore believes he worked no less than 336 hours in 2016.

34. Despite being paid for less than half his hours, Mr. Moore was at the store so much of the time that, at one point, Mr. Hundal suggested that Mr. Moore could move in and live in the office upstairs.

35. Without his consent, Mr. Moore was paid by a debit card. 7-ELEVEN would deposit his net pay onto the card and Mr. Moore could then spend the money. He never received statements from this debit card and does not know to this day if any fees were charged.

36. Mr. Moore worked stocking the store, cleaning the store, preparing and serving food and generally handling the most menial of tasks in the store. He was never permitted to work at the cash register. Mr. Moore later learned that the cash register was the point of entry for clocking in and out of work in the 7-ELEVEN Payroll System.

37. Additionally, Mr. Moore worked at Ms. Kaur's other 7-ELEVEN franchises. On New Year's eve he worked at the 4302 W. McDowell Road location as a greeter to prevent robberies. Mr. Moore was driven to that store by Mr. Hundal. Mr. Moore is informed and believes that, to the extent he was paid for this work, it was paid by the 7-ELEVEN Payroll System for his neighborhood store, not the 4302 W. McDowell store.

38. On another occasion Mr. Moore was asked to and did rebuild shelving in Ms. Kaur's 7-ELEVEN store located 4831 North 75th Avenue.

39. During the time he worked at 7-ELEVEN, Ms. Kaur and Mr. Hundal insulted and harassed Mr. Moore because of his disability. Ms. Kaur once told Mr. Moore "you are probably so retarded you never had a real job in your life." A few days later, she repeated the insult stating "you retard, get off my property." Mr. Hundal once referred to Mr. Moore as a "stupid fucking retarded bitch."

40. Mr. Moore is informed and believes that Ms. Kaur regularly had employees of one store work at other stores. Mr. Moore and other employees referred to these employees as "7-ELEVEN hoppers" because they would hop from one store to another.

41. On or around February 15, 2016, Mr. Moore was terminated because he began to complain about being underpaid and complained about discrimination because of his disability.

42. When he complained about being underpaid, Ms. Kaur and Ms. Hundal would dispute the hours he worked without citing or showing any evidence of clocking in and clocking out. The lack of record-keeping was used to take advantage of Mr. Moore.

43. For example, on or around February 10, 2016, Mr. Moore texted Mr. Hundal to complain about being paid $62.03 (net of withholdings) for 27 hours of work. Mr. Hundal's reply was "no way you worked that many hours . . . relax bro, I'm not going to short you money." Mr. Hundal did not refer or show Mr. Moore any clock-in and out times or other recordkeeping.

44. On or around February 15, 2016, Mr. Moore was fired by Mr. Hundal. Mr. Hundal stated that Arizona was a right to work state and that he would not tell Mr. Moore why he was fired.

45. Mr. Moore is informed and believes and therefore alleges that he was terminated because he complained that he was not paid for the all the hours he worked and because he threatened to report discrimination based on his disability.

46. When Mr. Moore told Mr. Hundal he would assert his civil rights in a lawsuit, Mr. Hundal retaliated by threatening to have Mr. Moore arrested. By text dated April 3, 2016, he stated:

> "If u want to play that game I can call the police and get a re[s]training order on u and the second u step foot on the store property they will come arrest you, I'm pretty sure u don't want to got to jail Shane."

47. Mr. Hundal repeated his retaliatory threats by text dated April 21, 2016, after Mr. Moore threatened to sue for wrongful termination:

> Do whatever u want dude, I'm going to cal[l] the police and get a restraining order on you[.] [Y]ou want to sue me then go ahead, do

whatever you want, if you show up to the store I'll have you arrested.

48. Mr. Moore is informed and believes and alleges that Kaur underreported this hours to the Arizona Department of Economic Security in response to his application for unemployment. Mr. Moore's application was denied because he was purportedly paid less than 390 times the Arizona Minimum Wage.

## DEMAND FOR JURY TRIAL

49. Plaintiff demands a jury trial on all counts.

## COUNT I

### Failure to Pay Overtime Wages in Violation of the FLSA

50. Plaintiff incorporates by reference all previous allegations as though set forth fully herein.

51. During 2015 and 2016, prior to the filing of this action, Defendants were Mr. Moore's "employer" as defined in 29 U.S.C. § 203(d).

52. During 2015 and 2016, prior to the filing of this action, Mr. Moore was a covered "employee" as defined in 29 U.S.C. § 203(e)(4).

53. During Mr. Moore's employment with Defendants, Defendants required Mr. Moore to work in excess of 40 hours per week without paying overtime compensation as required by the FLSA.

54. Mr. Moore has suffered economic damages as a result of Defendants unlawful conduct. Mr. Moore is entitled statutory remedies including payment for uncompensated hours worked, liquidated damages, prejudgment interest and attorneys' fees and costs.

55. As a direct result, Plaintiff suffered mental and physical harm, shame, embarrassment and lost compensation.

56. Defendant's conduct described above was aggravated, outrageous and guided by an evil mind; accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

## COUNT II

## Failure to Keep Records in Violation of the FLSA

57. Plaintiff incorporates by reference all previous allegations as though set forth fully herein.

58. During 2015 and 2016, prior to the filing of this action, Defendants were Mr. Moore's employers as defined in 29 U.S.C. § 203(d).

59. During 2015 and 2016, prior to the filing of this action, Mr. Moore was a covered "employee" as defined in 29 U.S.C. § 203(e)(4).

60. At all material times, Defendants did not keep accurate records of the hours Mr. Moore worked. Mr. Moore was never asked or told how to record his time in the 7-ELEVEN Payroll System.

61. Defendant's conduct described above was aggravated, outrageous and guided by an evil mind; accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

## COUNT III

**Failure to Pay the Minimum Wage in Violation of the Arizona Minimum Wage Act**

62. Plaintiff incorporates by reference all previous allegations as though set forth fully herein.

63. Defendants were required to pay Mr. Moore the Arizona minimum wage pursuant to A.R.S. § 23-363, but willingly failed to do so.

64. Defendants were aware or should have been aware of their obligation to pay Mr. Moore the Arizona minimum wage.

65. Mr. Moore is informed and believes and therefore alleges that Defendants failed to maintain payroll records showing the hour Mr. Moore worked each day, in violation of A.R.S. § 23-364(D).  Accordingly, there is a rebuttable presumption that Defendants did not pay the required minimum wage, and Defendants are subject to the civil penalties set forth in A.R.S. § 23-364(F).

66. As a result of Defendants' conduct, Mr. Moore suffered financial damages as well as mental and physical harm, shame and embarrassment.

## COUNT IV

**Failure to Timely Pay Wages in Violation of Arizona Wage Act**

67. Plaintiff incorporates by reference all previous allegations as though set forth fully herein.

68. At all material times Defendants were the employers of Plaintiff.

69. Defendants failed to pay wages owed to Mr. Moore in a timely manner.

70. As a direct result, Plaintiff suffered financial damages as well as mental and physical harm, shame and embarrassment.

71. Defendant's conduct described above was aggravated, outrageous and guided by an evil mind; accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

## COUNT V

### Disability Discrimination in Violation of the ADA

72. Plaintiff incorporates by reference all previous allegations as though set forth fully herein.

73. The ADA prohibits discrimination by employers against employees on the basis of their disability. Discrimination can occur "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

74. Plaintiff was during all material times disabled. 42 U.S.C. § 12111(4), (8).

75. Defendant Kaur is a "covered entity" and "employer" as defined by the ADA. 42 U.S.C. § 12111(2), (5).

76. Defendant discriminated against Plaintiff by terminating failing to pay him wages and overtime because of his disability, harassing Mr. Moore because of his disability, and ultimately terminating him because of his disability.

77. As a result of Defendants' wrongful conduct, Plaintiff suffered financial damages, mental and physical harm, shame and embarrassment.

78. Defendant's conduct described above was aggravated, outrageous and guided by an evil mind; accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

A. For an award of economic damages in an amount sufficient to make Plaintiff whole for past and future lost income and benefits and other economic losses suffered by Plaintiff resulting from Defendants' conduct;

B. For an award of compensatory damages for mental anguish, emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation, loss of enjoyment of life and other losses incurred by Plaintiff as a result of Defendants' conduct.

C. For an award of punitive damages;

D. For an award of attorneys' fees and related expenses;

E. For an award of prejudgment and post-judgment interest;

F. For an award of Plaintiff's costs of suit; and

G. For such other relief as the Court may deem just and proper.

Dated this 21 day of November, 2016,

**ARIANO & ASSOCIATES**

/s/Nathan M. Smith_____

Nathan M. Smith
Attorney for Plaintiff

Complaint and Demand for Jury Trial - 14